John A. Monteleone, J.
In these personal injury and loss of service actions, arising out of breach of warranties of fitness for use and merchantability, defendant moves to dismiss the complaint (CPLB 3211) on the ground that they are time-barred.
Plaintiff Walter Owens was allegedly injured on July 1, 1969 by a fall from malfunctioning scaffolding equipment (owned by defendant and leased to plaintiffs’ employer), delivered to the construction site on June 20,1969 under a rental agreement. The summons and complaint were served on June 27, 1973 — 4 years and 7 days after delivery of the equipment.
Uniform Commercial Code (§ 2-725, subd. [1]) limits actions for breach of contract to four years. The cause accrues when the breach occurs (§ 2-725, subd. [2]) regardless of the *993 aggrieved party’s lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made. However, where a warranty explicitly extends to future performance of the goods, and discovery must await performance, the cause accrues when the breach is, or should have been, discovered.
Plaintiffs reject the contention that their causes are subject to the four-year limitation, asserting that in any event if they are, the warranty ‘ ‘ explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance ” (Uniform Commercial Code, § 2-725, subd. [2]) and therefore the cause accrued on July 1, 1969, date of the accident, when the breach was discovered.
Two issues are presented: (1) Are the causes subject to the four-year time limitation of subdivision (1) of section 2-725 of the Uniform Commercial Code and if they are, (2) did they accrue on June 20, 1969 when tender of delivery of the goods was made or at the time of the accident on July 1,1969, when the breach was discovered (Uniform Commercial Code, § 2-725, subd. [2]).
Both parties agree that the scaffolding transaction involves an equipment lease, not a sale. But they disagree as to the effect of that fact, plaintiffs contending that therefore article 2 (Uniform Commercial Code, § 2-725) does not apply because that article and its sections deal only with sales transactions, while defendant argues that chattel lease transactions are also covered.
‘ ‘ Unless the context otherwise requires, this Article [2] applies to transactions in goods ” (§ 2-102). May we properly regard the scaffold equipment lease as “ transaction [s] in goods ” without doing violation to the context? Section 1-102 tells us to liberally construe the code ‘ ‘ to promote its underlying purposes [to] simplify, clarify and modernize the law governing commercial transactions * * * permit the continued expansion of commercial practices through custom, usage * * * [and] make uniform the law among the various jurisdictions.”
Extension of the Uniform Commercial Code’s implied warranties to chattel leases is facilitated by pre-code decisions imputing such warranties to lessors (Murray, Analogy of Article 2 of the Uniform Commercial Code, 39 Fordham L. Rev., pp. 447, 449). The warranty sections of article 2 in no way disturb those lines of case law growth which recognize that warranties need not be confined to sales contracts. They may arise in othér circumstances also (§ 2-313, Official Comment 2).
*994 In Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House (59 Misc 2d 226, revd. on other grounds 64 Misc 2d 910), an action for breach of warranty of equipment leases, the court determined that those leases come under article 2. It said: “ It would be anomalous if this large body of commercial transactions [equipment leases] were subject to different rules of law than other commercial transactions which tend to the identical economic result ” (p. 229). In reaching that conclusion the court reasons that the term ‘ ‘ transactions ’ ’ encompasses wider activities than “ sales ” and was not carelessly chosen in making article 2 applicable to “transactions in goods ” (§ 2-103). The 1955 Report of the Law Revision Commission (p. 363) reveals that “property” or “title” concepts are of negligible importance under article 2. The code considers the duties, rights and remedies arising from transactions as of primary importance relegating “ title ” concept to lesser status than under common law and the Uniform .Sales Act. The use in some sections, of the words 1 ‘ contract for sale ’ ’, and in others of the word “contract” may mean that the scope of article 2 is not limited solely to “ sales ” transactions with “title” and “property” as their symbols. (Hertz Commercial Leasing Corp. v. Transportation Clearing House, supra.)
Citing Herts, the court, in United States Leasing Corp. v. Franklin Plaza Apts. (65 Misc 2d 1082, 1088), an action on a chattel lease, applied the provisions of section 2-302 of the Uniform Commercial Code (permitting the court to refuse to enforce an unconscionable contract) to the lease by denying plaintiffs’ motion for summary judgment and calling for a trial so that the parties ‘ ‘ shall be afforded a reasonable opportunity to present evidence as to [contract’s] commercial setting, purpose and effect to aid the court in facilitating a determination. ’ ’
In Sawyer v. Pioneer Leasing Corp. (244 Ark. 943), an action on an ice machine lease, the court held that 2-316 of the Uniform Commercial Code (requiring exclusion of implied warranty of merchantability to be mentioned in language and if in writing to be conspicuous) is applicable to the lease agreement.
Those cases applied the warranty sections of article 2 because they found the transactions to he analogous to sales. However, the scaffold transaction in this case is clearly intended as a lease transaction.
Defendant rented and delivered to, and installed for, plaintiff’s employer, scaffolding equipment for use at a con *995 struction site while the job was in progress. The equipment was at all times to remain defendant’s property and upon completion of use was to be dismantled and made available to defendant for removal. Because the transaction in this case is solely a lease transaction, must we therefore conclude that the warranty sections of article 2 do not apply?
Conscious that frequently assertions of implied warranties are rejected where goods have been supplied under conditions not amounting to a sale, with the explanation that since the transaction is not technically a sale, no warranty could be implied, the Uniform Commercial Code draftsmen state in Official Comment 2 that the warranty sections of article 2 in no way impair the line of case law growth which recognizes that warranties need not be confined to sales contracts but may also arise in other appropriate circumstances such as in the case of bailments for hire.
Professor E. Allan Farnsworth (Columbia Univ. Law School) considered the matter of implied warranties in non-sales cases (57 Col. L. Rev. 653 [1957]) concluding that a non-sales contract (bailment) is very like a sale in regard to reliance upon the supplier of goods and that a warranty for fitness has been implied in a variety of such non-sales cases. The supplier’s obligation is in many respects similar to that of sellers. Just as the mass production of goods gave momentum to the growth óf modern law obligating sellers for the quality of their goods, so, too, the boom in chattel rental enterprises from automobiles and floor waxers to linens and diapers portend a similar increase in obligations of such suppliers. He concludes: “There is a respectable authority for the extension of implied warranties to non-sales cases ”.
Profs. Willier and Hart Forms and Procedures under Uniform Commercial Code express a similar view (par. 12.02, subd. 1, pp. 1-64-1-65): “ The warranty question is an example of application of Code provisions by analogy. While rented goods are not ‘ sold ’, a property interest short of ‘ title ’ is transferred as in a sale and the transaction is in the nature of a bargain= Thus, express warranties * * * could as well be a basis of the bargain under section 2-313 as in a sale, and implied warranties, collateral to the transfer aspect, could logically accompany the transaction. More specifically * * * the lessee may rely upon the lessor’s skill and judgment in supplying goods suitable for a particular purpose to the lessor [sec. 2-315]. How much simpler and more certain it is for courts, counsel and parties if they can apply the rules of Article 2 by *996 analogy to determine their obligations and their remedies.” The authors, .pointing out that section 2-101 applies to transactions in goods and that section 2-202 omits direct reference to sales transactions, state that article 2 warranties “ should apply to a lease of goods — a transaction in goods — by this simple construction of statutory language ’
In Division of Triple T. Serv. v. Mobil Oil Corp. (60 Misc 2d 720) an action on a non-sales contract (franchise agreement) plaintiffs argue that Uniform Commercial Code requires defendant to exercise “ good faith” in terminating the agreement, and that the clause permitting defendant to terminate it without cause is unconscionable. Defendant for its part does not question code applicability, arguing instead that its rights are not affected. Recognizing that it was dealing with a non-sales contract, the court said (p. 727) “ At first blush one might assume that the Uniform Commercial Code does not reach franchise or distributorship agreements [citing authorities]. However, the courts have not been reluctant to enlarge the type of commercial transactions clearly encompassed within the spirit and intendment of the statute (see Agar v. Orda, 264 N. Y. 248, holding that under the former Personal Property Law [Uniform Sales Act] — the predecessor to the Uniform Commercial Code — a sale of corporate stock certificates constituted a sale of ‘ goods ’; Vitex Mfg. Corp. v. Caribtex Corp., 377 F. 2d 795, holding damage remedies provided for in the Uniform Commercial Code available in a non-Code case; also, see, Recchio v. Manufacturers Trust Co., 55 Misc 2d 788).” The court then cited Hertz (supra) for the proposition “ that the Uniform Commercial Code govern[s] the rights of parties to an equipment leasing contract.”
Treating the requirements of subdivision (2) of section 2-316 as the State’s public policy with regard to disclaimer of warranty liability in commercial transactions, the court declared that such disclaimer in a golf cart rental agreement inconspicuously placed was void (Baker v. City of Seattle, 79 Wn. 2d 198).
In a line of Fairfield Lease Corp. cases involving actions on vending machine rental agreements, the court in Umberto (N. Y. L. J., July 15, 1970, p. 10, col. 3) found the agreement unconscionable under section 2-302 and dismissed the complaint ; in Commodore Cosmetique (N. Y. L. J., Dec. 15, 1969, p. 14, col. 8) defendant pled breach of implied warranty of fitness for use under 2-315 and was awarded damages for such breach; and in Fairfield Lease Corp. v. Umbrella Co. (N. Y. L. J., Nov. *997 6, 1970, p. 19, col. 4) the court found the lease unconscionable under 2-302, saying that “ the leasing agreement herein does come within the terms of article 2 of the Uniform Commercial Code,” citing Hertz Commercial Leasing Corp. v. Transportation Clearing House (59 Misc 2d 226, supra) and Division of Triple T. Serv. v. Mobil Oil Corp. (60 Misc 2d 720, supra).
The majority opinion in Leasco Data Processing Equip. Corp. v. Starline Overseas Corp. (74 Misc 2d 898) is not determinative. The court there found that the billing machine rental agreement was a “ ‘ title retention contract and lease * * * intended as security ’ within the meaning of subdivision (2) of section 9-102 of the Uniform Commercial Code” (p. 900) designed to give defendant possession and use of the machine by means of long-term installment payments without incurring the large initial outlay necessary to outright purchase. Subdivision (37) of section 1-201 defines “ security interest ” as “ an interest in personal property * * * which secures payment * * * of an obligation” and goes on to say “ whether a lease is intended as security is to be determined by the facts of each case; however * * * an agreement that upon compliance with the terms of the lease the lessee * * * has the option to become the owner of the property * * # for a nominal consideration does make the lease one intended for security.” Section 2-102 excludes “ any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction ” from article 2. However, the court in Leasco Data Processing Equip. Corp. v. Starline Overseas Corp. (74 Misc 2d 898, supra) rested its decision on lessee’s failure of proof to sustain its defenses and counterclaims. This court agrees with the minority opinion (p. 904) that the lease “ clearly warrants recognition and application of the penumbra of protection of the Uniform Commercial Code — article on sales ” and that defendant’s counterclaims for breach of warranty are barred by Statute of Limitations. (Uniform Commercial Code, § 2-725, subd. [1].)
The warranty sections of article 2 apply to chattel leases on the basis that from the consumer-user’s standpoint those leases are analogous to chattel sales (Murray, Analogy, 39 Fordham L. Rev., p. 453, supra). While there are legal differences between leasing and buying chattels, there is no real commercial or economic difference to a contractor-user of scaffolding equipment between buying equipment and leasing it for use on a job. To allow lease-sale distinctions to subject a supplier- *998 lessor to different liabilities than a supplier-seller preserves distinctions without differences.
Code draftsmen contemplated that situations similar to the one presented by this case might arise. Commenting on purposes of changes (§ 1-102, subds. ;[1] and [2]) they said: “ This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in this Act to be- developed by the courts in the light of unforeseen and new circumstances and practices.”
The causes in this action are subject to the four-year limitation of subdivision (1) of section 2-725, and, unless the “ warranty explicitly extends to future performance of the goods and discovery of the breach must await, the time of such pérformance ’ ’ and so the cause of action accrues when the breach is or should have been discovered (§ 2-725, subd. [2]), they are time barred.
Having determined that the warranty sections of article 2 apply to the equipment lease agreement, we now reach the question whether the warranty in this case comes within the exception to the rule that a breach of warranty occurs when tender of delivery is made (§ 2-725, subd. [2]). Breach of a prospective warranty occurs where “ a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance ”. In that case the cause accrues when the breach is or should have been discovered.
That defendant agrees (art. IX [5]) to repair the leased equipment when it malfunctions is not an express warranty with regard to performance of the goods. A promise to repair is an express warranty that the promise to repair will be honored (Zoos v. Royal Chevrolet, 11 UCC Rep. Serv. 527 [Ind. Super. Ct., 1972]). The seller’s warranty in Mittasch v. Seal Lock Burial Vault (42 A D 2d 573) that the vault “will give satisfactory service at all times ’ ’ is distinguishable from the supplier’s warranty to “ make modifications, alterations or repairs to the component parts of the equipment ” when necessary. In Mittasch the words of the warranty go to performance of the goods; that it 1 ‘ will give satisfactory service at all times ”. When the time came that the vault did not give satisfactory service the warranty was breached. It explicitly extended to future performance of the goods, and its breach could only be discovered at the time of such performance. *999 Therefore, the action in Mittasch first accrued when the breach was or should have been discovered (§ 2-725, subd. [2]).
In this case the warranty does not go to performance of the equipment. To warrant to make needed repairs to leased equipment is not a warranty extending to its future performance. All that the supplier promises is that if the equipment needs repairs he will make them. It does not promise that in the future the goods will not fall into disrepair or malfunction, as was warranted in Mittasch, but only that if it does, the supplier will repair it. Underlining the warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction. No warranty that the goods will not, is to be inferred from the warranty to make needed repairs.
As warranties of merchantability and fitness, the causes accrued when the breach occurred, regardless of the aggrieved party’s lack of knowledge. The breach occurred when tender of delivery of the scaffolding equipment was made on June 20, 1969. More than four years having elapsed from that date since this action was started, the causes are time barred by the four-year limitation (§ 2-725, subd. [1]).
Defendant’s motion is granted. The complaint is dismissed.