No. 47,822

DEAN VOTH, *Appellant*, v. CHRYSLER MOTOR CORPORATION and CHRYSLER CORPORATION, *Appellees*.

(545 P. 2d 371)

Opinion filed January 24, 1976.

*Douglas J. Moshier,* of Coombs, Lambdin, Kluge & Garrity, Chartered, of Wichita, argued the cause, and *Donald E. Lambdin,* and *Ted L. Peters,* of the same firm, were with him on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Frederick L. Haag,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This is a personal injury action seeking damages for alleged breaches of express and implied warranties in connection

with the purchase by plaintiff-appellant of a new Chrysler automobile on August 8, 1969.

The question presented is whether plaintiff's action is barred by the statute of limitations in contracts for sale set out in K. S. A. 84-2-725 of the Uniform Commercial Code. Plaintiff appeals from an adverse ruling entered on summary judgment by the trial court. The record before us consists only of plaintiff's petition, defendants' answer, motion for summary judgment, and the journal entry of the trial court's ruling thereon. The issue before us is of first impression.

The gist of plaintiff's petition is set forth in paragraphs 5, 6, 7 and 8 which read:

"5. Said automobile was expressly warranted by defendants to be safe for use with the automobile's air conditioner and heater running and with the windows shut for extended periods of driving.

"6. The automobile was also impliedly warranted to be fit for the purpose for which it was purchased and to be of merchantable quality.

"7. The automobile as set out above was neither safe for use with the windows closed and the air conditioner or heater operating for extended periods of driving, nor was it fit for the purpose for which it was purchased, nor was it of merchantable quality, and the aforesaid express and implied warranties were breached. As a consequence of the breach of warranty, plaintiff inhaled large amounts of gasoline fumes and contracted lead poisoning and has suffered great bodily harm, pain and suffering, insomnia, nausea, vomiting, unconsciousness, vertigo, headaches, numbness of body and limb, pallors, tremors, low blood pressure, loss of memory, loss of ability to effectively communicate, and has otherwise been prevented from transacting his day to day business. Plaintiff has incurred medical expenses in excess of $1,500.00 and will incur future medical and rehabilitative expenses in an indeterminate amount, but which will be shown at time of trial. Plaintiff's ability to earn a livelihood has been grossly impaired and thereby he has suffered great loss of income and incurred future loss of income in an indeterminate amount, but which will be shown at time of trial.

"8. On or about July 2, 1970, plaintiff discovered that the aforesaid implied and express warranties were breached and gave timely notice to the defendants thereof."

The petition was filed on June 27, 1974, some four years and ten months after the automobile was purchased on August 8, 1969, and just five days short of four years after discovery of the breach on July 2, 1970, as alleged in paragraph eight of plaintiff's petition.

Defendants answered plaintiff's petition, pleading, among other defenses, that plaintiff's claim was barred by the statute of limitations. After filing their answer defendants filed a motion for summary judgment.

The motion was heard on October 16, 1974. No record was made of the proceedings, but plaintiff has included a narrative statement in the record on appeal which describes the proceedings in this manner:

". . . On the 16th day of October, 1974, the Motion was heard in chambers in Division 2 of the District Court of Sedgwick County, Kansas, the Honorable Howard C. Kline presiding. Plaintiff argued that the applicable statute was not 60-512, but Kansas Statutes Annotated 84-2-725, wherein the limitation was four years. The plaintiff further argued that because of the warranties, both express and implied, and the nature of the defect in the automobile itself, to wit: a plugged gasoline tank vent tube which caused raw gasoline to be spewed upon various parts of the undercarriage of the automobile, the vapors of which were subsequently gathered by the air conditioning system of the automobile and dispensed throughout the automobile, was the type of occurrence which was explicitly extended to the future performance of the automobile pursuant to Kansas Statutes Annotated 84-2-725 (2). . . ."

The narrative statement goes on to recite:

"Plaintiff argued that the exception in K. S. A. 84-2-725 (2) applied to the case. In chambers, the Honorable Howard C. Kline ruled that Kansas Statutes Annotated 84-2-725 did apply; however, he refused to apply the exception under Kansas Statutes Annotated 84-2-725 (2). Plaintiff timely filed its appeal to the Supreme Court of the State of Kansas on October 29, 1974. Hence, this appeal."

In their brief defendants first contend that plaintiff's reliance on the written warranty is an attempt to expand his theories on appeal beyond those presented to the trial court, and, as such, this theory of the case is not properly presented to this court. Although the express warranty apparently was not attached to plaintiff's petition, nor included in the record on appeal, an express warranty was pled in paragraph five and breach thereof pled in paragraph seven of the original petition. This, we believe, satisfies the notice pleading requirements of K. S. A. 60-208 (a). In the Author's Commentary (Gard, Kansas Code of Civil Procedure, Annotated, § 60-208 [a]), Judge Gard states:

". . . Now that discovery in its broadest scope is available to all parties alike the need for the technical pleading vanishes from the picture, not because the rule says it must but because the parties will no longer find any great need for anything more than a bare-bones pleading which outlines the nature of the claim. . . . Nor are we any longer too greatly concerned with whether every allegation, considered necessary at common law, is pleaded or not, so long as the claim made fairly apprises us of its substance. Discovery will easily fill the gaps, and more effectively." (p. 31.)

Concerning notice pleading under our Code of Civil Procedure

we made this pertinent observation in *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P. 2d 41:

". . . Discovery in its broadest scope is available under the code of civil procedure. The .need for technical pleading has vanished. We now require only a bare bones pleading which outlines the nature of the claim. . . ." (p. 222.)

In considering the propriety of summary judgments we have long adhered to the rule that pleadings are to be liberally construed in favor of the party opposing the motion. (*Herl v. State Bank of Parsons*, 195 Kan. 35, 403 P. 2d 110.) We believe plaintiff's petition was sufficient to state a cause of action for breach of an express warranty.

The warranty, which is appended to plaintiff's brief on appeal, reads in pertinent part as follows:

"Chrysler Corporation warrants this vehicle to the first registered owner only against defects in material and workmanship in normal use as follows: (1) the entire vehicle (except tires)* for 12 months or 12,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of sale or delivery thereto; and (2) the engine block, head and all internal engine parts, water pump, intake manifold, transmission case and all internal transmission parts, torque converter (if so equipped), drive shaft, universal joints, rear axle and differential, and rear wheel bearings for 5 years or 50,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of such sale or delivery. Any part of this vehicle found defective under the conditions of this warranty will be repaired or replaced, at Chrysler's option, without charge at an authorized Imperial, Chrysler, Plymouth, or Dodge dealership."

We are not concerned herein with other portions of the document which include disclaimer clauses and provisions relating to requirements of maintenance services, etc.

Even though defendants relied on K. S. A. 60-512 in the first instance, both parties appear to agree now that the issue is controlled by 84-2-725. Both parties suggest the case is a simple one. Plaintiff takes the position that the allegations of his petition puts his case within the scope of the four-year rule set out in subsection (2) of 84-2-725. Defendants, on the other hand, say that plaintiff's reliance on 84-2-725 (2) is simply misplaced.

According to the official UCC comment the overall purpose of 84-2-725 of the code was to establish a uniform statute of limitations for sales contracts eliminating jurisdictional variations and providing relief for companies doing business on a nationwide scale. The statute was said to take sales contracts out of the general laws limiting the time for commencing contractual actions and that a

four-year period was selected as the most appropriate to modern business practice. (See, also, 67 Am. Jur. 2d, Sales, § 536, pp. 722, 723.)

Subsection (1) of the statute provides that an action for breach of any contract for sale must be brought within four years after the cause of action accrued. Subsection (2) provides that a breach of warranty occurs when tender of delivery is made and that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Since plaintiff's action in the instant case was commenced considerably more than four years after delivery of the automobile, it would be barred by the provisions of the statute normally applicable. With respect to the accrual of a cause of action for breach of warranty, lack of knowledge by the aggrieved party is of no consequence under the express language of subsection (2). Thus, the controlling question stated in simple terms is whether the instant warranty falls within the future performance exception spelled out in subsection (2) of the statute. Does the warranty here *explicitly* extend to future performance *and* must discovery of the breach await such future performance?

Resolution of the question requires a careful examination of the warranty. The obligation of the warranty is to repair or replace, at Chrysler's option, without charge any part of the vehicle found defective under the conditions of the warranty. It does not warrant performance without malfunction during the term of the warranty, but only warrants that Chrysler will repair or replace defective parts.

The warranty is structured in two sentences or obligations. The first warrants the entire automobile against defects in material and workmanship in normal use for 12 months or 12,000 miles, whichever occurs first after the date of delivery. The second warrants, in general, the internal parts of the engine and power train for 5 years or 50,000 miles. While the warranty in both instances protects against defects in material and workmanship, we believe, from the language employed, the second also goes to durability. In his brief, plaintiff expressly indicates that he is relying on the first or twelve months obligation of the warranty; thus we are not concerned with the second or five year warranty.

Plaintiff succinctly states his position in these words:

"In the instant case, the Chrysler automobile in question was purchased on or about August 8, 1969. Chrysler warranted the entire car and its per-

formance in normal use for twelve (12) months or until August 8, 1970. This warranty explicitly extends to future performance as contemplated by K. S. A. 84-2-725 (2). Appellant filed his Petition on June 27, 1974, and was within the four year limitation period."

The exception provided in 84-2-725 (2) upon which plaintiff relies is written in the conjunctive. It requires that the warranty must explicitly extend to future performance *and* further that discovery of the breach must await the time of such performance.

According to plaintiff's narrative statement the defect was a plugged gasoline vent and caused gasoline vapors to be gathered by the air conditioner which caused plaintiff's alleged injuries. This was a defect in workmanship which existed at the time of sale. Defendants say there is nothing concerning the discovery of an alleged defect which caused the malfunction of the air conditioning system of an automobile sold in Kansas in August which *must await* future performance. We are inclined to agree with the position taken by defendants on this point.

Both parties cite *Perry v. Augustine*, 37 D. & C. 2d 416, 3 UCC Reporting Service, p. 735. The *Perry* decision is one of the first to deal directly with 2-725 (2). In *Perry* the allegedly defective product was a heating system. The seller had warranted the system as being able to heat at 75° inside at —20° outside temperature. The system was installed in July. The seller's suit to recover for the cost of the system was met by the counterclaim of the buyer that the warranty had been breached. In response to buyer's counterclaim, the seller alleged that more than four years had elapsed since the time of installation and, thus, the counterclaim was barred under 2-725 (2). The buyer took the position that the warranty explicitly extended to future performance since discovery of the breach could not have occurred until October when the furnace was started, which was within four years of the filing of suit. In overruling the seller's motion for judgment, the court concluded that the warranty came within the exception set forth in 2-725 (2) and stated:

"Here, the warranty in question relates to what the heating system sold and delivered in June and July 1961, would do in the future, i. e., when it was tested under subzero temperature conditions. Discovery of a breach of that kind of warranty in this climate would necessarily have to await winter weather. . . ." (p. 418.)

The *Perry* case has attracted attention of commentators who have examined 2-725 (2). In Uniform Commercial Code (Hornbook

Series) by James J. White and Robert S. Summers at page 342, the authors observe that the court in *Perry* never made clear whether the warranty in fact extended to future performance. Concerning the rationale of the *Perry* court the authors say:

". . . The court's rationale is *discovery* of breach would have to await the future performance of the goods, and therefore the warranty was explicitly prospective. The reasoning is not persuasive. The same could be said of all warranties, and in the *Perry* case the temperature might never reach —20°." (p. 342.)

Further discussion of *Perry* may be found in Vol. 2 Anderson on Uniform Commercial Code (2nd Ed.) pp. 562, 563; Vol. 21 University of Florida Law Review p. 341; and Vol. 37 Fordham Law Review p. 249.

In his work, Mr. Anderson at § 2-725:24, at pages 562-563, distinguishes *Perry* from other cases dealing with 2-725:24 in these words:

". . . Hence the statute did not begin to run in the summer at installation but from the later winter when the heating system was found to be inadequate. But where injury results from an alleged defect in the goods, the cause of action arises and the statutory period begins to run with the date of the delivery of the goods which are defective."

The commentators seem to agree that the future performance exception of 2-725 (2) should be limited in application to those cases:

". . . Where, for example, seeds are sold and impliedly warranted to produce a specific fruit, the statute of limitations should not begin to run until it can be ascertained that the wrong seeds were sold. If a manufacturer understands that a certain product will be used for a particular purpose and knows that it will be impossible to detect any defects in the goods until a later period, the breach of warranty should not cause the statute to begin to run until it has become possible to ascertain whether there is a defect. . . ." (Vol. 37 Fordham Law Review, Sales Statute of Limitations, p. 249.)

We have not, heretofore, considered 84-2-725 in the context presented. *Atlas Industries, Inc. v. National Cash Register Co.,* supra, involved the sale and installation of an accounting machine and a corelated accounting system. We held that tender of delivery of the machine and system did not occur until installation was complete and said this result was consistent with 84-2-725.

*Freeto Construction Co. v. American Hoist & Derrick Co.,* 203 Kan. 741, 457 P. 2d 1, was a pre-UCC case. It involved a warranty as to the lifting capacity of a crane. The principal issue was whether the action was founded in tort or contract. We affirmed

the trial court's findings of contract and breach on delivery, and further found that there was nothing in the record suggesting a warranty as to the capability of the crane on a date more than five years after sale and delivery. There was nothing about the warranty of the crane's capacity in *Freeto* that required awaiting future performance in order to discover a breach.

In connection with the *Freeto* case, plaintiff cites *Brauer v. Republic Steel Corporation*, 460 F. 2d 801, (10th Cir. 1972), a pre-UCC case involving a warranty of fitness of pipe to be used by oil lease operators in a waterflood project. The breach of warranty claims were based on oral representations made by a sales representative of the seller-defendant which, the court said went to durability and were of a prospective or continuing nature. The court stated that it was of the opinion that under pre-UCC law Kansas would recognize a prospective warranty. (See, *Naaf v. Griffitts*, 201 Kan. 64, 439 P. 2d 83.) The court referred to the *Freeto* decision and noted that we said provisions of 84-2-725 were substantially in accordance with prior decisions.

Our observation in *Freeto* to that effect was reference to the long-standing rule recognized by this court that a cause of action arising from a contractual relationship accrues when the breach occurs. (See, *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986; and other cases cited on the point in *Freeto*.)

We turn next to the meaning of the word "explicitly" as used in the statute. In Webster's Third New International Dictionary (Unabridged) the adverb "explicitly" is defined as "in an explicit manner." Explicit is defined as "characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied." It is further stated "the chief emphasis of the word EXPLICIT is on the notion of plain distinct expression that leaves no need for the reader or hearer to infer; . . ." (p. 801.) (See, also, *Wilson v. Massey-Ferguson, Inc.*, 21 Ill. App. 3d 867, 315 N. E. 2d 580.)

*Owens v. Patent Scaffolding, Co.*, 77 Misc. 2d 992 [N. Y.], 354 N. Y. S. 2d 778, was a personal injury action arising out of alleged breaches of implied warranties for use and merchantability of scaffolding equipment which malfunctioned. The court was confronted with plaintiff's contention that the warranties in question fell within the future performance exception of 2-725. In rejecting plaintiff's contention the court said:

"In this case the warranty does not go to performance of the equipment.

To warrant to make needed repairs to leased equipment is not a warranty extending to its future performance. All that the supplier promises is that if the equipment needs repairs he will make them. It does not promise that in the future the goods will not fall into disrepair or malfunction, as was warranted in *Mittasch,* but only that if it does, the supplier will repair it. Underlining the warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction. No warranty that the goods will not, is to be inferred from the warranty to make needed repairs.

"As warranties of merchantability and fitness, the causes accrued when the breach occurred, regardless of the aggrieved party's lack of knowledge. The breach occurred when tender of delivery of the scaffolding equipment was made on June 20, 1969. More than four years having elapsed from that date since this action was started, the causes are time barred by the four-year limitation (§ 2-725, subd. [1])." (p. 999.)

The *Owens* court employed the decision in *Mittasch v. Seal Lock Burial Vault,* 42 A D 2d 573, to point out the distinction between a warranty to repair and a warranty extending to future performance. The court said:

". . . A promise to repair is an express warranty that the promise to repair will be honored (*Zoos v. Royal Chevrolet,* 11 UCC Rep. Serv. 527 [Ind. Super. Ct., 1972]). The seller's warranty in *Mittasch v. Seal Lock Burial Vault* (42 A D 2d 573) that the vault 'will give satisfactory service at all times' is distinguishable from the supplier's warranty to 'make modifications, alterations or repairs to the component parts of the equipment' when necessary. In *Mittasch* the words of the warranty go to performance of the goods; that it 'will give satisfactory service at all times.' When the time came that the vault did not give satisfactory service the warranty was breached. It explicitly extended to future performance of the goods, and its breach could only be discovered at the time of such performance. Therefore, the action in *Mittasch* first accrued when the breach was or should have been discovered (§ 2-725, subd. [2])." (pp. 998 and 999.)

Tested in the light of the plain meaning of the language employed in 84-2-725 (2), we cannot say that the warranties, express and implied alleged in plaintiff's petition, explicitly extended to the future performance of plaintiff's automobile and that discovery of the breach must have awaited the time of such performance. Under the provisions of the statute plaintiff's cause of action accrued when the breach occurred on tender of delivery. Since plaintiff's action was commenced more than four years after the tender of delivery it was barred by the statute of limitations prescribed by 84-2-725.

The judgment is affirmed.