PAKO CORPORATION, Appellant,

v.

Billy THOMAS and Anna Baker, Jointly and Severally, and d/b/a Foto Factory, Appellee.

No. 12–90–00227–CV.

Court of Appeals of Texas, Tyler.

May 28, 1993.

Cynthia Keely Timms, Dallas, for appellant.

H.L. McGee, Tyler, for appellee.

RAMEY, Chief Justice.

Appellant Pako Corporation ("Pako") appeals from a bench trial judgment for the Appellee Anna Baker ("Baker") on her counterclaim against Pako in the amount of $582,430.00, and for attorneys' fees, post-judgment interest and costs. Because we have concluded that Baker's counterclaim is barred by limitations, we reverse the trial court's judgment and render a take-nothing judgment.

In August 1982, Pako, a manufacturer of photo processing equipment, sued Baker and Billy Thomas ("Thomas") who had opened and operated a photographic laboratory ("Foto Factory"). Pako's original suit was an action for debt for monies owed under the terms of a sales contract for several pieces of photo processing equipment installed at Foto Factory on or about October 15, 1978. Some three months after the filing of this action but over four years following the delivery of the equipment, on December 2, 1982, Baker filed a counterclaim under the Texas Deceptive Trade Practices Act ("DTPA")[1], alleging that one of the four machines supplied by Pako, the RT–2014 paper processor, was defective.

In its first three points of error, Pako asserts that Baker's counterclaim was time-barred by the statute of limitations.[2] The trial court made no findings of fact or conclusions of law; Pako requested none. It is, therefore, implied that the court made all necessary findings to support the judgment entered. *Roberson v. Robinson*, 768 S.W.2d 280 (Tex.1989). Pako brought up the statement of facts on appeal; it challenges the court's implied findings as it would jury findings or specific findings of fact. *Ibid.* The judgment of the trial court must be affirmed if it can be upheld on a legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716 (Tex.1984).

1. Tex.Bus. & Com.Code Ann. Section 17.41 *et seq.* (Vernon 1987).

2. It is asserted that the counterclaim was time-barred as a matter of law, and, additionally, that the evidence was legally and factually in-

The parties agree that the four-year statute of limitations applies in this case.[3] The record is undisputed that the photo processing equipment had been installed at Foto Factory more than four years before Baker's counterclaim was filed. The question is whether Baker's cause of action accrued when the equipment was installed on Foto Factory's premises, or at some later date within four years of the filing of the counterclaim.

■ Baker, herself, testified that she discovered the defective condition of the paper processor when her business first opened "in October 1978". She specifically stated that she was personally aware of the problems with this equipment:

● "on day one";
● "as soon as we started the business";
● "from the very outset";
● "instantly";
● "from the very first when they first installed it";
● "virtually every day or every other day";
● "constantly";
● "(it) never ceased to break down";
● "always".

Baker never retracted any of these statements nor did she testify that she did not discover the equipment defect until a later date.

Furthermore, Baker confirmed by her own testimony that she knew that the paper processor defect was severe and adversely affected her business from the time she opened Foto Factory:

● "This machine was down at the beginning of the operation of photo factory at least 50% of the time."
● "When I first got them (the Pako equipment) we called Pako ... (Pako

serviceman) have almost become a part of our own staff. They were with us all of the time working on it.
● We did not have another machine of this kind in the business, (and) there is no way around the use of the machine so that we could continue."
● The machine's troubles in the beginning was that it "wouldn't track the paper right, and it was stripping the gears." As a result the customer's print "would stick to someone else's prints that were in there" and "you would have to throw them away because you can't separate them." As for the gear stripping "the cotter pins and the gear shafts would break"; "the gear would no longer mesh, and pretty soon it doesn't drive anymore and it backs the paper up ..." The service people "replaced the gears and got it running again for however long it lasted, 5 minutes or a day."
● "The business just stopped while it was down."

At no time in her testimony did Baker state that the equipment defect was insubstantial.

Thus, the Appellee Baker testified repeatedly that she had knowledge of the defects in the paper processor commencing in mid–October 1978 and that these defects were not trivial. These testimonial declarations were contrary to Baker's contention on appeal that her cause of action against Pako did not accrue until after December 2, 1978.

■ A party's testimonial declarations contrary to her contentions in the lawsuit are generally considered quasi-admissions[4]; judicial admissions are formal

---

sufficient to support the trial court judgment because limitations barred her cause of action.

3. Two-year statute of limitations applies to all actions under the DTPA that accrued on or after August 27, 1979, the effective date of Tex.Bus. & Com.Code Ann. Section 17.56A, now Section 17.-565 (Vernon 1987). *McAdams v. Capitol Products Corp.*, 810 S.W.2d 290 (Tex.App.—Fort Worth 1991, writ denied). This appeal involves alleged violations of the Act which preceded that date, at which time there was no specific DTPA limitations provision. The general stat-

utes of limitations controlled. The appropriate version of Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958), the four-year statute of limitations, is applied to DTPA claims that arose out of written contracts accruing before August 27, 1979. *Brooks Fashion Stores v. Northpark Nat. Bank*, 689 S.W.2d 937 (Tex.App.—Dallas 1985, no writ).

4. Some cases have held that a party's testimonial admissions are judicial admissions and binding upon that party. *Texas & P. Ry. Co. v. Wood*, 145 Tex. 534, 199 S.W.2d 652 (1947);

waivers of proof usually appearing in pleadings or party stipulations. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980). As a matter of public policy, however, a quasi-admission may have the effect of a judicial admission and preclude that party's recovery if it satisfies the requirements recited in *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (1960):

- "(1) That the declaration relied upon was made during the course of a judicial proceeding....
- (2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony....
- (3) That the statement is deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated....
- (4) That the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based.
- (5) That the statement is not also destructive of the opposing party's theory of recovery."

*Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). See Judge Norvell's comprehensive discussion of these elements in *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd).

In this case, Baker's testimonial admissions factually recounted information peculiarly within her own knowledge. *See Gevinson v. Manhattan Construction Co. of Oklahoma*, 449 S.W.2d 458, 466 (Tex.1969). In fact, Baker knew more about the problems with the photo processor than anyone.[5] We are unable to escape the conclusion that Baker's admissions were repeatedly deliberate, clear and unequivocal, contrary to her avoidance of the limitation plea. Furthermore, ascribing conclusive effect to Baker's repeated declarations is

consistent with public policy in eliminating the uncertainty and insecurity caused by stale claims and in assuring the flow of commerce. *Muss v. Mercedes–Benz of North America, Inc.*, 734 S.W.2d 155, 159 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Safeway Stores Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545 (Tex.1986). Finally, Baker's admissions are not inconsistent with Pako's theory of defense herein.

Thus, each of *Griffin's* elements of conclusiveness is satisfied. Under the testimony herein, there is no alternative to the holding that Baker's declarations were judicial admissions and conclusive upon her. *Griffin*, 338 S.W.2d at 418, 419; *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). These admissions establish that Baker had discovered the substantial defects in the paper processor as early as mid–October 1978. She would have been justified in bringing her DTPA suit against Pako then; her cause of action accrued at that time. *Hanmore Development Corp. v. JBK Enterprises*, 776 S.W.2d 738 (Tex.App.—Corpus Christi 1989, writ denied); *Tenowich v. Sterling Plumbing Co.*, 712 S.W.2d 188 (Tex.App.— Houston [14th Dist.] 1986, no writ).

In her briefs, Baker asserts several contentions in support of a later accrual of her cause of action. Initially, Baker argues that the testimony of James H. Miller ("Miller"), one of Pako's service representatives, "shows that the first malfunction of the machine in question was no earlier than *December 21, 1978* ", which was less than four years preceding the filing of the counterclaim. (Emphasis added). A review of the record, however, reflects that Miller's testimony concerning the Pako service calls from October to December 20 referred to a lessening of problems with the RT–2014 *after a September 3, 1980 modification to the paper processor machine*. This testimony did not pertain to

*Froelich v. Trinity Universal Ins. Co.*, 355 S.W.2d 85 (Tex.Civ.App.—Amarillo 1962, no writ).

**5.** Baker's partner, Thomas, probably knew as much about the equipment's malfunctioning un-

til he withdrew from the operation of the business in January 1981. Thomas confirmed Baker's testimony about the onset and the difficulties with the paper processor.

equipment malfunction and repair efforts for the months immediately after the original installation in October, November and December *1978.* Rather, Miller's testimony clearly pertained to a period of time nearly two years later after, "(t)hey put the modification kit on the machine", on September 3, 1980.[6]

■ Baker next argues that she had alleged a breach of implied warranty that "does not accrue until resulting damages are sustained, (citing cases)." The statute, however, provides that a breach of implied warranty occurs upon *tender of delivery of the goods, i.e.,* October 1978 in this case. TEX.BUS. & COM.CODE ANN. § 2.725(b) (Vernon 1968); "We hold, based on the rationale of the previous cases and the clear, unambiguous language of section 2.725(b) that an implied warranty cannot be explicitly extended to future performance." *Safeway Stores, Inc.,* 710 S.W.2d at 547–48 (Tex.1986). There is no merit to this contention.

Baker then argues that at least one court had extended the limitations period in holding: "The statute of limitations would not run until after four years and a reasonable time to repair or replace had expired." *Trunkline LNG Company v. Trane Thermal Company,* 722 S.W.2d 722, 725 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). This case is inapposite for the reason that *Trunkline* involved an *installment* contract calling for specific *future* deliveries of goods. *Ibid; see* Krahmer, *Commercial Transactions,* 42 Sw.L.J. 230, 231 (1988) (distinguishes *Trunkline* from other Texas cases because it involves an installment sales contract).

■ Baker next argues that Pako's repair representatives' repeated failure to successfully repair the paper processor constituted a continuous breach of the contract which tolled the statute. Texas courts hold that unsuccessful efforts to repair goods "in no way affects the question of limitations." *Muss,* 734 S.W.2d at 159–160; *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 364–65 (5th Cir.1988) (and Texas cases cited therein[7]).

■ In connection with these attempted remedial efforts, Pako's service personnel are alleged by Baker to have made oral misrepresentations that their repairs of the processor would be successful, upon which Baker relied to her detriment. Neither the attempts to repair, nor the vendor's representatives' assurances of the success of the efforts, toll the running of the statute of limitations. *Richker,* 436 S.W.2d at 218, 219; *Cooper–Bessemer Corp.,* 132 S.W.2d at 452; *Bishop–Babcock–Becker,* 245 S.W. at 105.

■ Next, Baker, in her supplemental brief, contends that Pako breached its express warranties: prior to the sale it is alleged that Pako's sales personnel represented that their machines could perform the work required by Baker's photo laboratory, but that if it did not, Pako would replace the equipment or refund the purchase price. Secondly, Pako gave an express written warranty that the equipment was free from defects in workmanship and material for the lesser of 12 months or 2000 metered working hours and required Pako to repair or replace the defective equipment. Baker argues "That warranty obligated Pako to repair or replace defective equipment. This confirmed the verbal warranty made by Pako salesmen that Pako would replace the equipment if it did not perform satisfactorily." Baker cites no authority in support of this contention.

The issue for us is whether these circumstances sustain an implied finding of fact extending the date of accrual of Baker's cause of action for limitation purposes. The dispute is whether these warranties "*explicitly extend(s)* to future performance of the goods" within the exception in TEX.

---

**6.** Baker also testified that by that time she could make the repairs herself, and the need for Pako service personnel reduced.

**7.** *Richker v. United Gas Corp.,* 436 S.W.2d 215, 218–219 (Tex.Civ.App.—Houston 1968, writ ref'd n.r.e.); *Cooper–Bessemer Corp. v. Shindler,* 132

S.W.2d 450, 452 (Tex.Civ.App.—Galveston 1939, no writ); *Bishop–Babcock–Becker Co. v. Jennings,* 245 S.W. 104 (Tex.Civ.App.—Austin 1922, no writ); *Fort Smith v. Fairbanks, Morse & Co.,* 101 Tex. 24, 27, 102 S.W. 908 (1907).

**220**

BUS. & COM.CODE ANN. § 2.725 (Vernon 1968) (emphasis added). "Courts construe the exception narrowly, with the emphasis on the term 'explicitly'." *Safeway Stores*, 710 S.W.2d at 548. "For an express warranty to meet the exception, it must make specific reference to a specific date in the future." *Ibid.* In *Safeway Stores*, Certainteed's "Dual 80" roof specifically ordered in the construction contract was warranted to be bondable for a 20 year period; the court held that the express warranty raised a fact issue as to whether this was a reference to a date in the future at which time the product's performance was explicitly assured. On the other hand, an express warranty to repair or replace for a period of time unrelated to *the guaranteed life of the particular product sold* has been held not to extend the limitations period. *Richker*, 436 S.W.2d at 216–219; *Cooper–Bessemer Corp.*, 132 S.W.2d at 452; *Bishop–Babcock–Becker*, 245 S.W. at 105.

Baker's next argument is that Pako also supplied a fourth piece of equipment to Baker, an R/C 24 XL Printer, by the terms of a later sales contract dated December 7, 1979, which machine was likewise defective and "... resulted in the destruction of Anna Baker's business ..." The record is clear, however, that the equipment malfunction in this case pertains solely to the operation of the RT–2014; in fact, Baker unequivocably testified that "the only problem" she had had with any Pako equipment was with the operation of the RT–2014 paper processor.

Finally, Baker cites several cases for the proposition that the limiting language in Pako's written warranties did not effectively limit Pako's express warranties. Whether the limiting language in the written warranties was effective is not at issue here; Pako's limitation defense is not dependent upon or related to attempted restrictions to its liability expressed in its written warranties.

Pako's points of error one, two and three are sustained. In light of our disposition of these points, Baker's remaining points of error need not be addressed. No counterpoint with reference to Pako's original suit against Baker has been asserted and the issue of recoupment is not presented.

The judgment of the trial court is reversed and rendered that Anna Baker take-nothing in her counter-suit against Pako Corporation.