Robert A. KLINE and Angela L. Kline,

v.

U.S. MARINE CORPORATION

No. 01–94–00093–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1994.

Rehearing Denied Sept. 22, 1994.

C. Timothy Reynolds, Houston, for appellant.

Kenneth A. Keeling, John V. Burger, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and ANDELL, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a judgment in favor of appellees, Robert A. Kline and Angela L. Kline, for breach of warranty. We reverse and render judgment that appellees take nothing.

On April 21, 1986, the Klines bought a motorboat and motor from Ted R. Briggs Marine Enterprises, Inc. Bayliner manufactured the boat; U.S. Marine manufactured the motor. Bayliner provided a written warranty to repair or replace any defective parts on the boat within one year from the date of delivery. U.S. Marine provided a written warranty on the motor, promising to replace any defective parts without charge for 12 months after purchase. Only the U.S. Marine warranty on the motor is relevant to this appeal.

Kline took delivery of the boat and motor two weeks after purchase and immediately took the boat to the lake. Kline used the boat six times during May, 1986, and experienced no problems with the boat's motor. Because Kline suffered a back injury, the boat was not used for the duration of the summer.

Kline next took the boat out in November, 1986, when his problems with the motor began. While out on Lake Conroe, the motor popped out of the water and into the air. Kline returned to shore. When Kline removed the boat from the water, the motor fell onto the cement boat ramp.

The next day, Kline took the boat and motor to Ted Briggs Marine, who accepted the damaged motor and mount as a defective part, repairing it under warranty at no cost to Mr. Kline. Kline stored the boat for the next three months.

Kline next used the boat in March or April of 1987, and for the first time began experiencing problems with the motor losing pow-

er. Kline again took the boat to Ted Briggs Marine. Briggs replaced the power pack or CD module, which Kline paid for because the warranty had expired.

The problems with the motor persisted. Kline discovered a cylinder was cracked. Because Ted Briggs Marine was bankrupt, Kline took the boat to another U.S. Marine authorized dealer. Although the motor was no longer under warranty, U.S. Marine replaced the short block of the motor at no cost.

Kline took the boat out the next day and the motor continued to "bog down." Kline took the boat to another U.S. Marine authorized dealer who replaced the jets in the carburetor and trigger coil, but could not locate the exact source of the problem. As a result, Kline began working on the motor himself.

Kline's personal attempts at fixing the motor were unsuccessful, and he again took the motor to yet another U.S. Marine authorized dealer. The dealer took apart the short block, but was unable to locate the source of the problem. Nevertheless, Kline was given another short block at no charge. This was the third short block to be installed. The problems continued.

Kline returned the motor to the dealer who replaced the short block. The dealer tested the motor again, including checking the compression, carburetor, fuel pump, and replacement of the puddle drain gasket. Again, although the warranty had expired, the work was done at no cost to Kline. The problems continued.

Kline spoke to a U.S. Marine representative, informed him of the persisting problems, and was sent two new carburetors and other replacement parts. The parts were installed without charge, but the motor still performed poorly. Appellees contend that in the course of repairing the motor, appellant damaged the boat.

The Klines sued for breach of express warranty on the motor and breach of implied warranty to repair in a good and workmanlike manner. The jury found for appellees on both theories, and judgment was rendered in their favor for $12,500 plus attorney's fees.

Therefore, if the record supports either ground of recovery, we will affirm. *American Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740, 748 (Tex.App.—Dallas 1984, writ dism'd by agr.).

■ In its first point of error, appellant contends the express warranty claim was barred as a matter of law by limitations. We agree.

The statute of limitations in contracts for sale of goods provides:

a. *An action for breach of any contract for sale must be commenced within four years after the cause of action accrued.* By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it.

b. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*

TEX.BUS. & COM.CODE ANN. § 2.725 (Tex. UCC) (Vernon 1968) (emphasis added).

The Klines took delivery of the motor in May, 1986. They sued on August 29, 1990, more than four years later. They contend, however, that the warranty explicitly extends to the future performance of goods, and therefore, limitations did not run until they discovered the breach.

The warranty provides:

This limited warranty covers failures by defects in material and workmanship in normal use and service for the first twelve months from the date of purchase by the first retail purchaser.

. . . .

U.S. Marine will repair or replace without charge for parts or labor, any parts it supplies which it deems defective pursuant

to the coverage described above at an outboard dealer authorized by U.S. Marine.

This warranty covers "failures by defects in material and workmanship" for 12 months from the date of purchase. Appellant relies on *Muss v. Mercedes–Benz of North America,* 734 S.W.2d 155, 157–58 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), which held that such warranty language does not explicitly extend to the future performance of goods, but instead limits liability exclusively to repair and replacement costs.

In *Muss,* the warranty stated:

Any authorized Mercedes–Benz dealer of the owner's choice will, without charge to the owner, perform warranty repairs made necessary because of defects in material or workmanship. . . . This warranty shall remain in effect until the vehicle has accumulated 24 months or 24,000 miles of use, whichever first occurs.

*Id.* The Dallas court of appeals concluded that this language did not explicitly extend to the future performance of goods. *Id.; see Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 548 (Tex.1986) (stating that courts construe the exception narrowly, with emphasis on the term explicitly). Other courts have reached the same conclusion as *Muss. Pako Corp. v. Thomas,* 855 S.W.2d 215, 219–20 (Tex.App.—Tyler 1993, no writ); *Patton v. Mack Trucks, Inc.,* 360 Pa.Super. 1, 519 A.2d 959, 963–67 (1986); *Allis–Chalmers Credit Corp. v. Herbolt,* 17 Ohio App.3d 230, 17 O.B.R. 496, 479 N.E.2d 293, 298–301 (1984); *Roy v. Armco,* 636 F.Supp. 839, 840–41 (E.D.Tex.1986); *Voth v. Chrysler Corp.,* 218 Kan. 644, 545 P.2d 371 (1976); *see also Walker v. Sears Roebuck & Co.,* 853 F.2d 355, 364–65 (5th Cir.1988).

Like the warranty in *Muss,* the warranty here does not explicitly extend to the future performance of the motor. Instead, it provides a remedy if the motor fails, U.S. Marine will repair or replace defective parts. We hold, as a matter of law, that this warranty did not explicitly extend to the future performance of the motor. Therefore, the limitations period began upon delivery, and appellees' claim for breach of express warranty more than four years later was barred.

We sustain the first point of error.

■ In its second point of error, appellant contends the evidence was legally and factually insufficient to support the jury's finding that repairs were not done in a good and workmanlike manner. Again, we agree.

■ In reviewing the no evidence point, we consider only the evidence and inferences that support the finding, and disregard all contrary evidence and inferences. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If more than a scintilla of evidence supports the finding, the "no evidence" challenge fails. *Id.* On appellant's "insufficient evidence" point, we consider all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We reverse only if the evidence is so weak that the finding was clearly wrong or manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ Appellees had to prove that the repairs were not done in a good and workmanlike manner. *See Melody Home Manufacturing Co. v. Barnes,* 741 S.W.2d 349, 354 (Tex.1987). The focus in such a claim is not on the result of the work done, but on the manner in which it was done. *Id.* at 355. Expert testimony is often required to support such a claim, but it is not required if the breach of implied warranty is plainly within the common knowledge of laymen. *Id.* Mr. Kline was the only witness who claimed the repairs were deficient. He admitted that he had no formal training in, and was not an expert on, boat motor repairs.

Appellees contend the judgment is supported by evidence of 1) the repeated replacement of the same part and appellant's overall failure to repair the motor, 2) the placing of the freshwater boat in saltwater, and 3) the failure to repair the cracked transom.

Regarding appellant's inability to fix the motor, courts have repeatedly held that the failure to repair, standing alone, is no evidence that the work was not done in a good and workmanlike manner. *Barnes,* 741 S.W.2d at 354–55; *Brooks v. Colonial Chevrolet–Buick, Inc.,* 579 So.2d 1328, 1334 (Ala. 1991). Here, no expert testified that appellant's repairs fell below the required stan-

dard of care. Mr. Kline himself testified he thought the problem was with the motor, not with the quality of repairs. His sole complaint was that the motor would not work, regardless of the quality of the repair job. When asked to "forget" about the condition of the motor and to "focus instead on the repair service," Mr. Kline testified that "the continuing problem" was the only indication he had that appellants did a poor job of repairs. He testified several times that he was "not here to tell this jury that repair services that they performed on the boat were done in an unworkmanlike manner." He testified that because the problem was recurring and could not be fixed, he was "inclined" to conclude "that the problem exists with the motor itself, not with the services that are being performed on the motor." He testified that no experts told him the problem was with the repair service. He testified that determining the quality of these repairs was "outside the knowledge" of a layperson and of a jury.

Appellees claim that placing their boat in saltwater was evidence of unworkmanlike repairs because it was a freshwater boat. Mr. Kline was the only witness on this point. He testified that he told Munson Marine not to put the boat in saltwater, but they did so in order to test it, which caused many problems, including extensive corrosion. We hold that this is no evidence that repairs were not done in a good and workmanlike manner. Mr. Kline was not an expert and offered no expert testimony. He offered no documentary testimony, such as owner manuals for the motor or for the boat stating that either should be kept out of saltwater. On the contrary, the owner's manual for the motor contains two sections specifically dealing with operating the motor in saltwater. Although appellant may not have followed Mr. Kline's instruction, there is no evidence that they did not follow the appropriate standard of care in the industry by placing this particular boat in saltwater.

Finally, it is undisputed that no repairs were made or attempted to the boat's transom. Mr. Kline testified that, "there's nothing for us to expect regarding any repairs on the transom since there were no repairs."

Nor was there any expert testimony that appellant should have repaired or tried to repair the transom in the course of a good and workmanlike repair job on the motor.

This is not a case like *Melody Home*, where anybody could tell the repairs were shoddy. In *Melody Home*, water pipes were left unconnected, flooding the home. In this case, no evidence, expert or otherwise, showed the repairs were done negligently.

We sustain the second point of error.

The trial court's judgment is reversed, and judgment is rendered that appellees take nothing.

OLIVER–PARROTT, Chief Justice, concurring.

I agree with the majority's reasoning and ruling on point of error two and concur in the majority's ruling on point of error one. The simple issue before us on this first point of error is whether or not the statue of limitations on the written warranty expired four years from the date of delivery or four years from the date the appellees first discovered the breach. The controlling statue states:

a. *An action for breach of any contract for sale must be commenced within four years after the cause of action accrued.* By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it.

b. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*

Tex.Bus. & Com.Code Ann. § 2.725 (Tex. UCC) (Vernon 1968) (emphasis added).

The Supreme Court has held that emphasis must be placed upon the term "explicitly," and the warranty must make specific refer-

ence to a specific date in the future. *Safeway Stores, Inc. v. Certainteed Corp,* 710 S.W.2d 544, 548 (Tex.1986). The boat in question was warranted against failures by defects in material and workmanship for 12 months from date of purchase. It does not contain the *explicit* language required by *Safeway Stores, Inc.,* but the language that it does contain should be enough. I believe the dictates of *Safeway Stores and Muss v. Mercedes–Benz of North America,* 734 S.W.2d 155 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), which draw a distinction between warranted performance and warranted remedy were not required nor envisioned by TEX.BUS. & COM. CODE ANN. § 2.725 (Tex.UCC) (Vernon 1968).