# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00060-CV

**Homer Alvarado and Valania Alvarado, Appellants**

**v.**

**The Abijah Group, Inc., d/b/a and f/k/a Baker Surveying and Engineering, Inc., Appellee**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT NO. CV07317, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## MEMORANDUM OPINION

At issue in this appeal is whether limitations bars Homer and Valania Alvarado from asserting claims against a surveyor, The Abijah Group, Inc., d/b/a and f/k/a Baker Surveying and Engineering, Inc. (Baker), for errors in a survey that the surveyor disclosed five years before the Alvarados filed this suit. We hold the trial court did not err by dismissing through summary judgment the Alvarados' claims on limitations grounds.

## BACKGROUND FACTS

In 2004, Baker prepared a partial survey of the Clear Rock Ranch near Johnson City, Texas in connection with efforts by its owners and developers to subdivide the property. As part of the survey, Baker partitioned a 355-acre tract into two adjacent lots measuring 160 and 195 acres, respectively. Baker's survey misstated the actual acreage of the two adjacent tracts, however, showing that the larger tract had 200 acres when, in fact, it consisted of just under 195 acres. The

adjacent tract contained the remaining five acres, but Baker's survey mislabeled the property as having 155 acres, rather than its actual 160 acres.

In February 2006, the Alvarados purchased the purported 200-acre tract with the intent of subdividing the property into two tracts. The restrictions governing the subdivision, though, prohibited the subdivision of property into tracts containing less than 100 acres. Based on Baker's survey showing that the tract contained 200 acres, the Alvarados believed that their tract could be subdivided. In fact, as previously stated, their tract consisted of just 195 acres, and the remaining five acres had been conveyed to their neighbor, Darryl Crawford, as a part of his purchase of the adjacent plot.

By June 2007, the parties agree that Baker had discovered and disclosed the survey errors to the Alvarados. The Alvarados, Baker, and Crawford then met shortly thereafter to discuss the survey errors. The record is unclear as to whether the parties reached an agreement during this meeting, and if so, what the terms were for the agreement. It is undisputed, however, that Baker paid a contractor after the meeting to move the fence line between the properties. The new fence line purported to delineate a changed boundary between the properties, moving the disputed five acres from Crawford's tract to the Alvarados' tract. It is also undisputed that Baker provided the Alvarados with an amended survey and deed showing this purported corrected boundary.

The Alvarados filed the updated survey and amended general warranty deed on February 2, 2010. In his sworn affidavit, Homer Alvarado averred that Baker "by and through its various representations affirmatively indicated to us that our concerns about not owning a full 200 acres had been taken care of with the updated survey and the amended deed." An amended

surveyor's report prepared by Baker indicated, however, that the Alvarados had received a letter from Crawford stating that he "would be ready to pursue the agreement" only after certain actions were completed, including obtaining HOA approval. There is no indication in the record that approval was obtained from the homeowners' association or of a written agreement reached between the Alvarados and Crawford.

In May 2010, Crawford moved the fence back to its original location and sold his property, including the disputed five acres. The Alvarados then attempted to sell a 100-acre tract from their property and received an offer. In connection with the sale, the title company retained Baker to provide an updated survey of the property. Baker reported back that the Alvarados' parcel designated for sale contained only 95 acres. Because the partition violated the deed restrictions, the sale could not be completed. Shortly thereafter, the homeowners' association sued the Alvarados for improperly partitioning the property in violation of the restrictive covenants. The parties to that suit entered an agreed judgment in May 2011, recording the correct legal description of the property as just under 195 acres, enjoining the Alvarados from any future attempts to partition the property, and awarding attorney's fees against the Alvarados.

On February 27, 2012, the Alvarados sued Baker for DTPA violations and negligence, alleging injuries from the errors in the initial survey conducted by Baker in 2004. Baker initially filed a general denial but amended its pleadings, on November 7, 2012, to add limitations as a defense. The same day, Baker also filed a motion for summary judgment on limitations grounds. On December 14, the Alvarados filed a response contending that limitations did not bar their claims under the discovery rule or fraudulent-concealment doctrines. Baker, in turn, filed a reply

3

contending that the Alvarados could not invoke these defenses in response to the summary-judgment motion because they had not been pleaded in either the Alvarados' original petition or in an amended petition. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex. 1988) ("A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance."); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (party asserting fraudulent concealment as an affirmative defense to limitations has burden of pleading defense and supporting it with summary-judgment evidence). Baker nevertheless responded to the merits of the Alvarados' defenses, contending that the discovery rule did not apply because the Alvarados had actual knowledge of the surveying error many years prior to their filing suit and that fraudulent concealment was inapplicable because Baker had disclosed rather than concealed the error.

On the morning of the summary-judgment hearing, the Alvarados filed an amended petition incorporating the fraudulent-concealment and discovery-rule defenses that had been set forth in their summary-judgment response but not included in their original petition. They did not file a motion for leave to amend their pleadings within seven days of the summary-judgment hearing but orally requested leave at the hearing. *See* Tex. R. Civ. P. 63 (amended pleadings filed within seven days of trial shall be filed only after leave of trial court is obtained); *IKB Indus. Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (summary-judgment proceeding is a trial within the meaning of Tex. R. Civ. P. 63).

Baker objected to the Alvarados amending their petition on the morning of the summary-judgment hearing, contending they could not raise new issues in their pleadings on the day

4

of the hearing and that the new pleadings would require them to "start all over" after already completing discovery. *See* Tex. R. Civ. P. 63 (motion for leave to amend pleadings within seven days of trial "shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party"). The trial court sustained Baker's objection to the Alvarados' summary-judgment response and denied leave to amend their petition, thus leaving the Alvarados' original petition as the only live pleading. Based on the original petition, the trial court then granted summary judgment on limitations.

In two issues on appeal, the Alvarados contend: (1) the trial court erred in failing to consider their defenses to limitations; and (2) in light of their defenses, the trial court erred in granting summary judgment because fact issues existed as to when their causes of action accrued under the discovery-rule and fraudulent-concealment doctrines.

**STANDARD OF REVIEW**

Defendants moving for summary judgment on the affirmative defense of limitations must prove conclusively the elements of that defense. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000). This includes conclusively proving when the cause of action accrued. *KPMG*, 988 S.W.2d at 748. In addition, if the plaintiff has pleaded the discovery rule, the defendant has the burden of negating the rule by proving as a matter of law that there is no genuine issue of fact as to when the plaintiff discovered or should have discovered the nature of the injury. *Id*. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary-judgment proof raising a fact issue in avoidance of the statute of limitations. *Id*.

5

The burden of proof is the opposite, however, for fraudulent concealment. Fraudulent concealment is an affirmative defense to the adverse party's plea of limitations. *See American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994). Therefore, the party asserting fraudulent concealment has the burden of raising it in response to the summary-judgment motion and submitting evidence raising a fact issue on each element of fraudulent concealment. *Id*. A mere pleading or response to the summary-judgment motion does not satisfy this burden to come forward with sufficient evidence to prevent summary judgment. *Id*.

## DISCUSSION

The Alvarados filed suit against Baker on February 27, 2012, alleging negligence and DTPA claims based on the survey errors disclosed by Baker in June 2007. Generally, a cause of action accrues and the limitation period begins to run when facts come into existence authorizing a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011); *see also KPMG*, 988 S.W.2d at 749 ("[A]ccrual occurs when the plaintiff knew or should have known of the wrongfully caused injury."). Here, even assuming that the Alvarados cause of action did not accrue until Baker informed them of the errors in the survey, they filed suit well past the undisputed two-year statute of limitation applicable to negligence and DTPA claims. Thus, absent some theory that tolls the running of limitations or estops Baker from asserting limitations as a defense, limitations bars the Alvarados' claims as a matter of law.

The Alvarados counter that the discovery rule or fraudulent concealment doctrines tolled the accrual of their claims until they attempted to sell the property and discovered that Baker's efforts to remedy the survey errors had failed. Described as a "very limited exception to statute of

6

limitations," the discovery rule defers accrual of a cause of action until the plaintiff's injury could reasonably have been discovered. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011). The discovery rule is applied categorically to instances in which the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Id*. at 66. The discovery rule does not, however, toll limitations until the plaintiff discovers all of the elements of a cause of action. *KPMG*, 988 S.W.2d at 749; *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ). Rather, "[k]nowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Emerald Oil*, 348 S.W.3d at 209.

The second doctrine the Alvarados contend serves to extend the limitations period for their claims is fraudulent concealment. Under this equitable doctrine, a "defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues." *BP Am. Prod. Co.*, 342 S.W.3d at 67. "A party asserting fraudulent concealment must establish an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Id*. Unlike the categorical approach used for the discovery rule, fraudulent concealment is fact-specific and equity-driven. *Id.* But even where the doctrine is invoked, fraudulent concealment only tolls the running of limitations "until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The estoppel effect of fraudulent concealment "ends when a party learns of facts, conditions, or circumstances which would cause a

7

reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Id*. at 909; *see Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) ("Fraudulent concealment will not . . . bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence.").

Thus, neither the discovery rule nor fraudulent concealment applies to claims that could have been discovered during the limitations period through the exercise of reasonable diligence. *See Kerlin*, 263 S.W.3d at 925 ("Like fraudulent concealment, the discovery rule does not apply to claims that could have been discovered through the exercise of reasonable diligence."). While reasonable diligence is generally an issue of fact, "in some circumstances, we can still determine as a matter law that reasonable diligence would have uncovered the wrong." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58 (Tex. 2015). "For example, if the plaintiff has 'actual knowledge . . . of injury-causing conduct,' then this 'starts the clock on the limitations period.'" *Id*. at 59 (quoting *Emerald Oil*, 348 S.W.3d at 209.). Therefore, "irrespective of the potential effect of fraudulent concealment or the discovery rule on limitations, actual knowledge of alleged injury-causing conduct starts the clock on the limitations period." *Emerald Oil*, 348 S.W.3d at 209 (holding neither discovery rule nor fraudulent concealment tolled limitations where royalty owners had knowledge of alleged injury-causing conduct but failed to file suit within limitations period).

Here, even assuming that the trial court erred in failing to consider the Alvarados' assertion of the discovery rule and fraudulent concealment doctrines, the summary judgment evidence established that the Alvarados had actual knowledge, more than four years prior to filing

8

suit, of the survey errors they pleaded as the basis for their negligence and DTPA claims. Thus, we do not reach the question of whether the trial court erred in failing to consider these defenses because we conclude, regardless of the application of the discovery rule or fraudulent concealment doctrines, the Alvarados' actual knowledge of the survey errors started the limitations period for their claims. *See id*. (not reaching question of whether fraudulent concealment or discovery rule tolled limitations where plaintiffs had actual knowledge of alleged wrongful conduct more than two years prior to filing suit).

Despite their actual knowledge of the survey errors, the Alvarados contend that Baker's remedial efforts should toll the limitations period until they attempted to sell their property and discovered the remedial efforts had failed. While faulty remedial efforts or false assurances of repair may give rise to an independent cause of action, *see PPG Indus., Inc. v. JMB/Houston Ctrs. Partners*, 146 S.W.3d 79, 95–96 (Tex. 2004), the Alvarados do not contend Baker's remedial efforts gave rise to new causes of action, and Texas courts have generally held that unsuccessful remedial efforts alone cannot toll limitations. *See, e.g., id.* at 96 (seller's repair efforts alone not enough to extend limitations period for consumer's breach of warranty claims); *Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 360 (Tex. App.—Fort Worth 2005, no pet.) ("[W]e have not found any cases in which the mere making of repairs, without more, estopped a defendant from asserting limitations."); *Pako Corp. v. Thomas*, 855 S.W.2d 215, 219 (Tex. App.—Tyler 1993, no writ) ("Neither the attempts to repair, nor the vendor's representatives' assurances of the success of the efforts, toll the running of the statute of limitations."); *Clade v. Larsen*, 838 S.W.2d 277, 281 (Tex. App.—Dallas 1992, writ denied) ("Nor does remedial performance, such as structural repairs, toll the running of the statute of limitations."); *Bishop-Babcock-Becker Co. v. Jennings*, 245 S.W. 104,

105 (Tex. Civ. App.—Austin 1922, no writ) (vendors efforts to repair defects in machinery and assurances of success did not affect limitations, rather limitations was put in motion by discovery of the defect and "not interrupted by subsequent attempts to remedy the defects nor by assurances given"); *see also K-7 Enters., L.P. v. Jeswood Oil Co.*, No. 2-03-312-CV, 2005 WL 182947, at \*6 (Tex. App.—Fort Worth Jan. 27, 2005, no pet.) (mem. op.) (where property owner was aware of contamination from leak in neighboring underground gas tanks, court held that false assurances of successful remediation of contamination did not toll limitations because owner "possessed knowledge of facts that would make a reasonable person verify the contamination levels on its property after the alleged remediation . . . [and] undisputedly possessed knowledge of facts that, if investigated, would have revealed [its] cause of action").

But even if false assurances of remediation can toll limitations, the Legislature has limited the amount of time a plaintiff has to file such a claim under the DTPA. The limitations provision of the DTPA provides:

> All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. *The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure to timely commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.*

Tex. Bus. & Com. Code § 17.565 (emphasis added). Thus, even if the Alvarados established that Baker knowingly engaged in conduct solely calculated to induce them to postpone filing suit, the

limitations period for their DTPA claims can only be extended an additional 180 days. As it is undisputed that the Alvarados filed their DTPA claims past this 180-day tolling period, limitations bars those claims as a matter of law.

For the Alvarados' common-law negligence claims, this Court has applied equitable tolling in cases where a defendant's actions—unmixed with any want of diligence on the plaintiff's part—induced the plaintiff to not bring a timely suit on a claim the plaintiff knew he possessed against the defendant. *See Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *see also Smith v. J-Hite, Inc.*, 127 S.W.3d 837, 843 (Tex. App.—Eastland 2003, no pet.) (equitable tolling applies where claimant has been induced or tricked by adversary's misconduct into allowing filing deadline to pass). The Alvarados, however, did not plead nor argue equitable tolling at the trial court, nor have they argued the applicability of the doctrine on appeal. *See Hand v. Stevens Transp., Inc. Empl. Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.) (proponent of equitable tolling bears burden of showing entitlement to doctrine). Regardless, even when the doctrine is properly invoked, a plaintiff must establish diligence in filing "the cause of action he knows he has [and] may not continue to rely upon the defendant's original inducement beyond a point when it becomes unreasonable to do so." *Leonard*, 731 S.W.2d at 129; *see also Neal v. Pickett*, 280 S.W. 748, 753 (Tex. Comm'n App. 1926, jdgmt adopted) ("[O]ne claiming suspended operation of the statutes of limitations, or estoppel against their apparent effect, must have not ignored the requirements of due care and blindly relied upon a situation as being what it seemed rather than as being what it in reality was."). Here, the uncontroverted summary-judgment evidence showed that the Alvarados had notice within the limitations period—despite whatever assurances

11

were allegedly given by Baker—that their neighbor had not agreed to the boundary change. *See PPG Indus., Inc.*, 146 S.W.3d at 98 (noting that even if false assurances of repair could toll limitations, there was no evidence plaintiff was misled by defendant's false assurances rather than its own false hopes). Moreover, the Alvarados waited to file their suit until almost two years after their neighbor moved the fence line and almost a year after they lost their suit to the homeowners' association. Even where the doctrine applies, equitable tolling will not extend the limitations period indefinitely, and a plaintiff must be diligent in the prosecution of his suit. *See*, *e.g*, *Ruiz v. Austin Indep. Sch. Dist.*, No. 03-02-00798-CV, 2004 WL 1171666, at *5 (Tex. App.—Austin May 27, 2004, no pet.) ("We see no reason to apply an equitable tolling theory to allow for an indefinite period of time within which to re-file a suit in this case."). As the Alvardos have neither preserved error for equitable tolling nor shown diligence, we see no reason to apply an equitable tolling theory to indefinitely extend the limitations period for their negligence claim.

## CONCLUSION

Concluding limitations bars the Alvardos' DTPA and negligence claims, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Affirmed

Filed:   July 29, 2015