**Opinion filed February 21, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00049-CV

_____

## BELTWAY PARK BAPTIST CHURCH, INC., Appellant

## V.

## GUY BOLTON D/B/A BOLTON STEEL ERECTORS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 49047-A**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a summary judgment. Appellee, Guy Bolton d/b/a Bolton Steel Erectors, filed a motion for summary judgment alleging that all of the claims asserted by Appellant, Beltway Park Baptist Church, Inc., were barred by the applicable statutes of limitations. After conducting a hearing on the motion, the trial court entered an order granting Bolton's motion for summary judgment. The trial court's summary judgment dismissed all of Beltway's causes of action with prejudice. In a single issue, Beltway challenges the summary judgment. It asserts

that the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding the accrual date for its claims. We affirm.

*Background Facts*

In 2009, Beltway contracted with Bolton to construct improvements on Beltway's property. During the construction, Beltway's facility director noticed that the roof of the building leaked. The next year, in the spring of 2010, Bolton and Goldsmith Construction, the company hired by Beltway to serve as a consultant and onsite supervisor for the work, completed construction of the building. Beltway alleged that, after Bolton turned over the building to Beltway, the building continued to leak every time it rained from 2010 to 2017.

In an e-mail sent on September 19, 2012, Beltway's Administrative Pastor, Bruce Reinhardt, described the situation as follows to representatives of Goldsmith: "[W]e've really put up with a 'new' leaking roof since we moved into the newly constructed areas." This e-mail indicated that Beltway had hired a roofing company to evaluate the building. On October 4, 2012, the roofing company provided Beltway with a written report describing the deficiencies of the building and construction.

Beltway contacted Bolton about the leaking building more than once in 2012. Reinhardt's e-mail of September 19, 2012, stated that Bolton had come out "three times" that year and that "all he [did was] recommend that WE repair things." In that same e-mail, Reinhardt stated that Beltway "deserve[s] a non-leaking roof and it's our full contention that we have paid for that service but have never received the appropriate satisfaction." A month later, in an October 18, 2012 e-mail, Beltway's Director of Facilities, Bobby Copelin, stated that Bolton "went on and on about how he couldn't fix the problem properly because the building wasn't designed right."

The next year, on May 15, 2013, Reinhardt sent an internal e-mail to another pastor at the church, David McQueen. The e-mail reiterated that Beltway was having

2

problems with leaking water after rain and stated that Reinhardt had again discussed the issue with Bolton. In the e-mail, Reinhardt stated that Bolton was "lying about our communication[s] with him." Further, Reinhardt discussed "possible litigation if this isn't resolved."

Beltway filed the underlying action on May 13, 2015, asserting causes of action for negligence, gross negligence, breach of contract, breach of duty of good and workmanlike manner, and violations of the Texas Deceptive Trade Practices Act (DTPA). Subsequently, Bolton filed a motion for summary judgment, asserting that summary judgment was proper because the applicable statutes of limitations barred all of Beltway's claims. In response, Beltway filed an amended petition that added causes of action for fraud and fraud by nondisclosure. Beltway responded to the motion for summary judgment by relying on the discovery rule, the doctrine of fraudulent concealment, Bolton's alleged breach of the duty of good faith, estoppel, and the continuing-tort doctrine. After a hearing, the trial court rejected Beltway's arguments and granted Bolton's motion for summary judgment.

*Analysis*

Beltway presents a single issue for our review concerning whether it raised a genuine issue of material fact as to the accrual date of its claims and whether the applicable statutes of limitations barred such claims. We review a trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When reviewing a summary judgment, we review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the motion. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

3

When a defendant moves for summary judgment on the affirmative defense of limitations, the defendant has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). To meet this burden, the defendant must conclusively prove when the cause of action accrued and negate the discovery rule, if the discovery rule applies and has been pleaded or otherwise raised. *Id.* The defendant negates the discovery rule by proving as a matter of law that there is no genuine issue of material fact regarding when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered its injury. *Id.*

The limitations period for negligence and gross negligence is two years. *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2017)) (negligence); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) (citing CIV. PRAC. & REM. § 16.003(a)) (gross negligence). A claim for a violation of the DTPA is also subject to a two-year statute of limitations. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (West 2011); *Nghiem v. Sajib*, 567 S.W.3d 718, 720 (Tex. 2019). Claims for breach of contract and fraud are subject to a four-year statute of limitations. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203, 216 (Tex. 2011) (citing CIV. PRAC. & REM. §§ 16.004(a)(4), .051 (West 2002)). A claim for breach of the implied warranty of good and workmanlike manner, when not alleged as a violation of the DTPA, may be subject to a four-year statute of limitations. *Nghiem*, 567 S.W.3d at 720, 725.

Beltway asserts that its claims did not accrue until May 15, 2013, when, according to Beltway, Bolton made a misrepresentation to convince Beltway to forestall litigation. Beltway bases this assertion on Reinhardt's e-mail to McQueen on May 15, 2013, wherein Reinhardt stated: "Bolton said that he does not want any of us to waste money on a lawsuit so he and a crew will be out tomorrow to fix the

roof." As stated by Beltway in its brief: "This case is about a contractor that built a bad building, made representations to the owner that he would fix what he had broken - and even represented if you don't sue me I promise I will fix your building."

The question of when a cause of action accrues is a question of law. *Provident Life & Accident Ins.*, 128 S.W.3d at 221. Generally, a cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another. *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015). For example, a claim for breach of contract accrues when the contract is breached. *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015). Bolton asserts that, at the latest, Beltway's causes of action accrued in the fall of 2010 after Beltway moved into the newly constructed portion of the church building and experienced leaks. We agree.

*Discovery Rule*

Beltway asserts that the discovery rule deferred the limitations period because the harm was "inherently undiscoverable." The discovery rule defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury. *Cosgrove*, 468 S.W.3d at 36. As the party seeking summary judgment on the affirmative defense of limitations, Bolton had the burden to negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when Beltway discovered or should have discovered the nature of the injury. *See B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 48 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *KPMG Peat Marwick*, 988 S.W.2d at 748).

The discovery rule is limited to "circumstances where 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Cosgrove*, 468 S.W.3d at 36 (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). "An injury is inherently

5

undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). An injury is not inherently undiscoverable when it could be discovered through the exercise of reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). "Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Emerald Oil & Gas Co.*, 348 S.W.3d at 209.

"The discovery rule may apply to a breach of contract claim, but 'those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'" *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006)). Because contracting parties generally are not fiduciaries, due diligence requires that each party protect its own interests. *Via Net*, 211 S.W.3d at 314.

The summary judgment evidence conclusively establishes that Beltway's alleged injury was not inherently undiscoverable. To the contrary, Beltway discovered the alleged construction defects as early as 2009 and knew that they existed when Bolton completed the project in 2010. As noted by Beltway in its brief, "[t]his is not a question of whether or not everyone had knowledge that the building was broken. This is about the fact that Bolton made representation after representation that Bolton was fixing the building." The injury allegedly suffered by Beltway was not inherently undiscoverable because Beltway knew about the alleged construction defects for five years before filing suit against Bolton. Therefore, the summary judgment evidence conclusively negates the discovery rule.

6

*Fraudulent Concealment*

Beltway also contends that Bolton's allegedly fraudulent concealment deferred the accrual date for Beltway's causes of action until May 15, 2013. A plaintiff asserting fraudulent concealment as a defense in the summary judgment context to a claim of limitations has the burden of producing evidence that raises a genuine issue of material fact as to each element that would support his assertion. *KPMG Peat Marwick*, 988 S.W.2d at 749; *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994). In fraud and fraudulent concealment cases, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6.

Fraudulent concealment tolls the statute of limitations until the injured party, using reasonable diligence, discovered or should have discovered the injury. *KPMG Peat Marwick*, 988 S.W.2d at 750. The fraudulent-concealment doctrine is an affirmative defense to limitations that estops a defendant from relying on the defense of limitations if the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the party to whom it belongs. *Doe v. Roman Catholic Archdiocese of Galveston-Houston ex rel. Dinardo*, 362 S.W.3d 803, 810 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 228 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). "Fraudulent concealment requires showing that the 'defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'" *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017) (quoting *Marshall*, 342 S.W.3d at 67). However, "[f]raudulent concealment will not . . . bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

Here, there is no evidence in the record to support Beltway's assertion that Bolton fraudulently concealed any construction defects. To the contrary, Beltway had known about the alleged construction defects since 2009, which preceded Bolton's completion of the project in 2010. In 2012, Reinhardt stated that the church had dealt with the leaking roof since Beltway moved into the newly constructed areas in 2010. Thus, the alleged legal wrong was not hidden from Beltway; it knew about the roof leak issues five to six years before filing suit against Bolton. Therefore, Beltway did not raise any genuine issues of material fact to support its assertion that any concealment by Bolton deferred the accrual date of Beltway's causes of action.

*Equitable Estoppel*

Beltway alternatively argues that, even if the court finds that there was no fraudulent concealment or that the discovery rule does not apply, Bolton was equitably estopped to assert the defense of limitations. Beltway bases this contention on the May 15, 2013 e-mail from Reinhardt to McQueen. A plaintiff may invoke equitable estoppel to prevent an opponent from prevailing on limitations if the opponent, his or her agent, or representatives make representations that induce the plaintiff to delay filing suit within the applicable limitations period. *Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 486 (Tex. App.—Texarkana 2003, pet. denied) (citing *Cook v. Smith*, 673 S.W.2d 232, 235 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)).

To defeat Bolton's limitations defense with a claim of equitable estoppel, Beltway was required to present summary judgment evidence sufficient to raise a fact issue for each element of his claim of equitable estoppel. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017). The elements of equitable estoppel are as follows: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of

8

the facts; and (5) who detrimentally relies on the representation or concealment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)). When equitable estoppel is alleged in avoidance of a limitations defense, the failure to file suit must be unmixed with any want of diligence on the plaintiff's part. *Medina v. Tate*, 438 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *see Rincones*, 520 S.W.3d at 593–95 (Plaintiff's knowledge "well before limitations ran" of a viable cause of action precluded application of equitable estoppel to defeat a limitations defense.).

Beltway asserts that, when viewed most favorably to Beltway, the summary judgment evidence shows that Bolton made a representation to Beltway in May 2013 that, if Beltway would forego litigation, Bolton would fix the alleged construction problems. In response, Bolton cites a line of cases for the proposition that unsuccessful remedial efforts alone cannot toll limitations. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 95–96 (Tex. 2004).

We first note that limitations for the causes of action subject to a two-year statute of limitations had already expired prior to May 2013. Beltway has not cited any authority, and we have found none, that an expired limitations period is revived under the doctrine of equitable estoppel. Accordingly, Beltway's claim of equitable estoppel has no application to Beltway's claims for negligence, gross negligence, or violations of the DTPA.

Limitations for Beltway's claims for breach of contract, fraud, and breach of the implied duty of good and workmanlike manner had not expired in May 2013 because they were subject to a four-year statute of limitations. Beltway asserts that Bolton's offer to repair the roof leak in May 2013 in order to forestall litigation

resulted in Bolton being equitably estopped to later claim limitations as a defense.

We disagree. In *PPG Industries*, the Texas Supreme Court stated as follows:

> [A]lmost one hundred years ago, we held a seller's repair efforts do not extend the limitations period for breach of warranty claims. Texas courts have been applying that rule ever since, as do the courts of most other states.
>
> Serious problems would arise if the rule were otherwise. For example, if the statute of limitations was tolled every time a car needed repairs during a warranty period (and what car does not), the warranty period would become perpetual, and dealers would be loath to make any. We should encourage sellers to attempt repairs; tolling limitations every time they do might discourage them from doing so at all.

146 S.W.3d at 95 (footnotes omitted). Thus, Texas courts have generally held that unsuccessful remedial efforts alone cannot toll limitations. *See, e.g.*, *id.* at 96 (seller's repair efforts alone not enough to extend limitations period for consumer's breach of warranty claims); *Dean v. Frank W. Neal & Assocs.*, 166 S.W.3d 352, 360 (Tex. App.—Fort Worth 2005, no pet.) ("[W]e have not found any cases in which the mere making of repairs, without more, estopped a defendant from asserting limitations."); *Pako Corp. v. Thomas*, 855 S.W.2d 215, 219 (Tex. App.—Tyler 1993, no writ) ("Neither the attempts to repair, nor the vendor's representatives' assurances of the success of the efforts, toll the running of the statute of limitations."); *Clade v. Larsen*, 838 S.W.2d 277, 281 (Tex. App.—Dallas 1992, writ denied) ("Nor does remedial performance, such as structural repairs, toll the running of the statute of limitations."); *Bishop–Babcock–Becker Co. of Tex. v. Jennings*, 245 S.W. 104, 105 (Tex. App.—Austin 1922, no writ) (vendors' efforts to repair defects in machinery and assurances of success did not affect limitations; rather, limitations was put in motion by discovery of the defect and was "not interrupted by subsequent attempts to remedy the defects nor by assurances given").

The summary judgment evidence does not raise an issue of fact on Beltway's claim of equitable estoppel to defeat Bolton's limitations defense. Reinhardt's e-mail of May 15, 2013, indicated that Bolton said "that he does not want any of us to waste money on a lawsuit so he and a crew will be out tomorrow to fix the roof." Reinhardt followed that sentence with a statement that two men from the church would be there the next day to meet with Bolton and "we'll see what happens." Thus, the delay that Bolton is alleged to have induced was one day in length. Approximately sixteen additional months passed after May 2013 before limitations on the four-year causes of action expired in the fall of 2014. Reinhardt testified in his deposition that the roof leaked each time it rained during 2013 and 2014. Beltway has not provided evidence to explain the delay in filing suit prior to the fall of 2014. *See Medina*, 438 S.W.3d at 591. Furthermore, Bolton's offer in May 2013 was to repair the original defect that Beltway had been alleging since 2009. Under *PPG Industries*, Bolton's offer to remediate the alleged defect did not toll the application of the statute of limitations.

*Continuing Tort*

Beltway also argues that, because Bolton's representations to repair the original defect constituted a continuing tort, the tortious causes of action did not accrue until May 15, 2013, the date of Bolton's last representation. A cause of action for a continuing tort accrues when the tortious conduct ceases. *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied) (citing *Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co.*, 812 S.W.2d 647, 654 (Tex. App.—Dallas 1991, writ denied)). "The doctrine of continuing tort, with its extension of accrual date, is rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury." *Rincones*, 520 S.W.3d at 592. The Texas Supreme Court has "neither endorsed nor addressed" the continuing-tort doctrine. *Id.* However, the Waco, Dallas, and Austin courts of appeals have applied it "in cases

11

of false imprisonment, negligent infliction of emotional distress, and continued use of injury-producing medicine." *Id.*

If a plaintiff discovers its injury and its cause, the rationale for the continuing-tort doctrine no longer applies, and the statute of limitations commences to run at that point. *Upjohn*, 885 S.W.2d at 544 (citing *Atha v. Polsky*, 667 S.W.2d 307, 310 n.10 (Tex. App.—Austin 1984, writ ref'd n.r.e.)). As noted in *Rincones*, "[w]e follow our rule that 'a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy' and the 'fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run.'" 520 S.W.3d at 593 (quoting *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). The continuing-tort doctrine is inapplicable in this case because Beltway's alleged injury arises from a single act—Bolton's construction of improvements on Beltway's property.

*Fraud*

Finally, Beltway contends that Bolton's May 2013 representation also constituted common law fraud and that a cause of action for it did not accrue until it was made. The elements for fraud are as follows: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). The limitations period for a fraud cause of action "does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) (citing *Marshall*, 342 S.W.3d at 69).

Beltway asserts that it delayed filing suit because of Bolton's alleged representation in May 2013. This delay is the injury upon which Beltway's fraud claim is premised. Thus, Beltway's fraud claim is essentially the same as its claim of equitable estoppel. The First Court of Appeals dealt with an analogous situation in *Hixon v. Tyco Int'l, Ltd.*, No. 01-08-0050-CV, 2011 WL 1584767 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op.). The court concluded that the plaintiffs' attempt to recast their time-barred claims as new claims based upon "faulty repairs and faulty assurances" failed because the only damages asserted by the plaintiffs for the new claims were that they were induced to not timely sue the defendants. *Id.* at \*5–6 (citing *PPG Indus.*, 146 S.W.3d at 95–96). We agree with the reasoning of the court in *Hixon*. Otherwise, a plaintiff could use a defendant's offer to repair as a basis for tolling the statute of limitations, a practice that is not permitted. *See PPG Indus.*, 146 S.W.3d at 95–96.

We overrule Beltway's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

February 21, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.